IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

NORTHERN DISTRICT OF TEXAS
**FILED**

JUN 1 0 2014

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | | |
|---|---|---|
| ROGER DALE MEDFORD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| VS. | § | NO. 4:14-CV-003-A |
| | § | |
| TARRANT COUNTY, ET AL., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
and
ORDER

Now before the court for consideration is a complaint filed
in the above action by plaintiff, Roger Dale Medford, naming the
following defendants: Tarrant County ("County"); Sheriff Dee
Anderson ("Anderson"); Sgt. C. Penrod ("Penrod"); Officer B. Bohn
("Bohn"); Officer M. Newton ("Newton"); Officer B. Wallace
("Wallace"); Unknown Officer #7; Unknown Officer #8; Unknown
Officer #9; Unknown Officer #10; Defendant #11, "17 Unknown
Officers,"[1] Compl. at 8; Defendant #12 Unknown Supervisor aka
Officer Swain ("Swain"); "Defendant #13 Unknown Officer aka
Robles," Id. at 9 ("Robles"); "Defendant #14 Unknown Officer aka

---

[1] The court is dismissing a number of claims and defendants in this memorandum opinion and order, and giving plaintiff the opportunity to file an amended complaint if he wishes to proceed against the remaining defendants. If plaintiff files an amended complaint, he may not group seventeen defendants into "Defendant #11," but must separately identify each defendant.

Aguirre, aka Aguelara," id. ("Aguirre");[2] and, "Defendant #15 Unknown Officer aka McCray," id. ("McCray").  Swain, Robles, Aguirre, and McCray are sued in their individual capacities only; the remaining defendants are sued in their individual and official capacities.

Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."  Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation omitted).  Thus, the claims against any of the defendants in their official capacities would be claims against their employer, County.  Because County is already a named defendant, the claims against the individuals in their official capacities are redundant of those against County.  Accordingly, the court is dismissing the claims against the individual defendants in their official capacities.

I.

### Plaintiff's Complaint

It is difficult for the court to determine the exact contours of plaintiff's claims, as the complaint--twenty-eight mostly single-spaced typewritten pages, plus numerous attachments--appears in some ways to be a lengthy narrative of

---

[2]The court will refer to this defendant as "Aguirre" throughout this memorandum opinion and order.

everything that happened during plaintiff's incarceration at County's jail.[3]  When plaintiff arrived at the jail on January 4, 2012, he informed Officer #7, the intake officer, that he was at the jail for a bench warrant and asked to be placed in protective custody due to the nature of his offense, injury to an elderly person.  Officer #7 told plaintiff that only when a case involved children was a prisoner placed in protective custody.  Plaintiff was instead placed in the general population.

On or about January 7 or 8, 2012, two prisoners told plaintiff that they had learned from a third prisoner about plaintiff's crime, and the two were concerned for plaintiff's safety, because of the nature of his crime.  On the evening of January 9, 2012, plaintiff was moved to another part of the jail, the "Old Belknap Jail," Compl. at 10, where he was placed in a tank with seven other prisoners.  Later that same night, plaintiff heard one prisoner tell another that there was a "hit" on plaintiff, and that unnamed prisoners were going to attack plaintiff and take his property.  Id.  Plaintiff told one officer, who moved plaintiff to a holding cell.

At some point other prisoners around plaintiff began asking

---

[3]Plaintiff is incarcerated in a facility that is part of the Texas Department of Criminal Justice ("TDCJ").  However, in the complaint, plaintiff alleges that he was sent to County on January 4, 2012, on a bench warrant for a hearing on a habeas claim.  It appears plaintiff was returned to the TDCJ facility sometime in late February or March of 2012.

him about his case, but became angry when plaintiff said he could not discuss the matter.  The other prisoners "harassed" plaintiff all night, and told plaintiff that when the doors went up at 7:00 in the morning, they were going to assault plaintiff.  Id. at 11. When the doors opened in the morning, plaintiff was "frozen with fear." Id.  "It is not clear what happened but Plaintiff believes he had an altercation with Trent McCuir Aka Rico and several other inmates.  To the best of [plaintiff's] belief and information" he was assaulted.  Id.  Plaintiff "woke up" on the floor of the "Mental Health and Mental Retardation Ward" ("MHMR Ward") without any of his property.  Id.  Plaintiff "could not find any obvious injury but was sore all over." Id.

From January 10 to January 14, 2012, plaintiff claims Swain "harassed" him over the intercom by "talk[ing] crazy" to plaintiff, and plaintiff "talked crazy to" Swain.  Id.  Various officers allegedly harassed and threatened plaintiff, and Robles drew pentagrams on the small window of plaintiff's cell and "ask[ed] [plaintiff] to work for him and Satan." Id.

On or about January 13, 2012, several unnamed officers sprayed plaintiff with mace.  On January 15, 2012, shortly after midnight, four unknown officers allegedly removed plaintiff from his cell, in handcuffs and leg shackles, and took him through the tunnels from the Tarrant County Correction Center to the Belknap

4

Unit.  Several of the officers purportedly assaulted plaintiff,
and plaintiff recalled hitting one of the officers.  Plaintiff
lost consciousness during the attack, and woke up "writhing on a
mattress."  Id. at 12.  The officers took plaintiff to a shower
to wash off the mace; while there, two officers put plaintiff's
hands behind his back "into a bucket of water and then
electrocuted" him.  Id.  The officers laughed when plaintiff
asked for medical care.  Plaintiff had a black eye, a knot on his
rib cage, his right hand was swollen, his left shoulder was
injured, and he had deep cuts on his ankles from the leg
shackles.  Id.

Plaintiff contends he was restricted to his cell on the MHMR
Ward from January 16, 2012, to January 21, 2012.  On February 2,
2012, plaintiff refused to meet with his habeas attorney,
believing that the attorney and a new judge assigned to his
habeas action might be "in on what was happening."  Id. at 13.
However, on February 3, 2012, plaintiff finally agreed to attend
his court hearing.  Plaintiff had "long hair, was dressed in jail
clothes and had a long beard," and had lost weight.  Id. at 14.
Plaintiff's counsel requested, and was granted, a continuance,
and the judge granted counsel's request to refer the case to the
judge who had previously presided over the habeas action.

Plaintiff was subsequently evaluated by the head

psychiatrist or psychologist, who told plaintiff that he would be moved back to the general prison population. On February 8, 2012, plaintiff was moved to the Belknap unit.

On February 12, 2012, plaintiff and another prisoner had a verbal exchange. Later that same prisoner threw a mixture on plaintiff comprised of the prisoner's "own crap and piss and other things mixed in." Id. at 16. Plaintiff apparently flooded his cell attempting to clean up the mess. Plaintiff was returned to the TDCJ facility soon thereafter.

The complaint asserts eight causes of action: (1) failure to protect, alleged against County, Anderson, Officer #7, Officer #9, and Officer #10; (2) use of excessive force, asserted against County, Anderson, Penrod, Bohn, Wallace, Defendant #11, Robles, McCray, Aguirre, and Newton;[4] (3) cruel and unusual punishment due to failure to provide medical treatment, against two unnamed officers[5]; (4) conspiracy to retaliate for exercise of plaintiff's First Amendment right of access to the court, against Anderson, Penrod, Newton, Bohn, Wallace, Defendant #11, and Officer #8; (5) violation of plaintiff's First Amendment right to

---

[4]Individuals named Johnson, Cukran, Jackson, and Perez also appear to be included in this claim but are not named as defendants. If plaintiff wishes to assert claims against these individuals he must identify them as defendants in the amended complaint.

[5]The two unnamed officers appear to be part of the "17 Unknown Officers" named as Defendant #11.

be free from retaliation for exercising rights to free speech and

freedom of religion, against Swain, Robles, Wallace, and McCray;

(6) violation of plaintiff's rights under the Equal Protection

Clause, the Americans with Disabilities Act ("ADA"), and section

504 of the Rehabilitation Act ("RA"), against County, Anderson,

and Officer #7; (7) violation of plaintiff's procedural and

substantive due process rights, against Officer #9, Penrod,

Wallace, Bohn, Aguirre, McCray, and Defendant #11; and, (8)

assault, against County, Anderson, Penrod, Bohn, Wallace,

Aguirre, McCray, and Defendant #11.

## II.

### Evaluation of the Complaint Under 28 U.S.C. § 1915A

As a prisoner seeking redress from government officials,

plaintiff's complaint is subject to preliminary screening under 28

U.S.C. § 1915A. See Martin v. Scott, 156 F.3d 578, 579-80 (5th

Cir. 1998). Section 1915A(b)(1) provides for sua sponte dismissal

if the court finds that the complaint is either frivolous or

fails to state a claim upon which relief may be granted. A claim

is frivolous if it "lacks an arguable basis in either fact or

law." Neitzke v. Williams, 490 U.S. 319, 325 (1989). A

complaint fails to state a claim upon which relief can be granted

when, assuming that all the allegations in the complaint are true

even if doubtful in fact, such allegations fail to raise a right

to relief above the speculative level.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In evaluating whether the complaint states a valid claim for relief, the court construes the allegations of the complaint favorably to the pleader.  Warth v. Seldin, 422 U.S. 490, 501 (1975).  However, the court does not accept conclusory allegations or unwarranted deductions of fact as true, and a plaintiff must provide more than labels and conclusions or a formulaic recitation of the elements of a cause of action. Twombly, 550 U.S. at 555; Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994).

Having now considered the allegations in the complaint, the court concludes that it should be dismissed in part under the provisions of 28 U.S.C. § 1915A, and that plaintiff should be required to file an amended complaint.

### III.

### Analysis

A.   All Claims Against County are Dismissed

1.   Claims Pursuant to 42 U.S.C. § 1983

A governmental entity, such as County, can be subjected to monetary damages or injunctive relief only if one of its official policies caused a person to be deprived of a federally protected right.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

County cannot be held liable under a theory of respondeat superior or vicarious liability. <u>Id.</u> Instead, liability may be imposed against a local government entity under § 1983 only "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." <u>Connick v. Thompson</u>, ___ U.S. ___, 131 S.Ct. 1350, 1359 (2011) (quoting <u>Monell</u>, 436 U.S. at 692) (internal quotation marks omitted). To hold County liable under § 1983 thus requires plaintiff to "initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted." <u>Spiller v. City of Texas City, Police Dept.</u>, 130 F.3d 162, 167 (5th Cir. 1997) (internal quotation marks and citation omitted). Liability against local government defendants pursuant to § 1983 hence requires proof of a policymaker, an official policy, and a violation of constitutional rights whose "moving force" is the policy or custom. <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." <u>Spiller</u>, 130 F.3d at 167.

Plaintiff has asserted the following § 1983 claims against County: failure to protect; excessive force; and violation of plaintiff's Fourteenth Amendment rights under the Equal

Protection Clause.   Concerning the failure to protect claim, the complaint alleges as to County:

> 38.   Tarrant County's policy or custom concerning protective custody and protection of inmates from assaults and attempted assaults was inadequate to protect Plaintiff's Constitutional Due Process Rights under the Fourteenth Amendment to the Constitution.
>
> 39.   If the policy or customs of protective custody and protection of inmates from assault and attempted assault are found to be adequate then Tarrant County's policy of training and supervising employees in those policies and customs was grossly inadequate and amounted to deliberate indifference to those rights and Plaintiff's violations showed a pattern and was a highly predictable or plainly obvious consequence of Tarrant County's action in policy and custom or inaction of proper training and supervision.

Compl. at 17.

The allegations in the complaint as to the remaining § 1983 causes of action against County are similarly worded.   The problem for plaintiff is that these assertions are all conclusory.   No information is given about any of the policies or policymakers, only speculation about County's policies generally. Absent from the complaint are any facts pertaining to County's policies or how the policies were the "moving force" behind any of the alleged violations of plaintiff's constitutional rights. Nor does the complaint contain specific facts that describe the policies' relationship to anything that is alleged in the complaint.

Further, the general rule is that allegations of isolated incidents are insufficient to establish a custom or policy. Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992). A plaintiff typically must demonstrate "at least a pattern of similar violations." Id. (citation omitted). Yet the twenty-eight page complaint offers no allegations or examples of similar violations that could support a claim of municipal liability.

Plaintiff pleads in the alternative that if County's policies are found to be adequate, County may also be liable as a result of its failure to train and supervise employees in those policies. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, ____ U.S. ____, 131 S.Ct. at 1359. The failure to train must constitute "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Id. (brackets in original) (citation omitted). To establish deliberate indifference for a failure to train requires the plaintiff to show a pattern of similar constitutional violations. Id. at 1361. Again, however, plaintiff makes only conclusory assertions concerning County's purported failure to train. No facts are alleged showing, or even suggesting, any pattern of similar violations that would demonstrate deliberate indifference on County's part.

11

The sum of the foregoing is that plaintiff has alleged nothing but conclusory assertions as to any of his § 1983 claims against County, whether proceeding under a "custom or policy" theory of one of a "failure to train." Accordingly, all of plaintiff's § 1983 claims against County are dismissed.

    2.    Assault Claim Against County

    "Sovereign immunity protects the State from lawsuits for money damages." Reata Const. Corp. v. City of Dallas, 197 S.W.3d 371, 374 (Tex. 2006) (citation omitted). Governmental immunity provides similar protection for political subdivisions of the state, such as County, unless such immunity has been waived. Id. The Texas Tort Claims Act ("TTCA") provides such a waiver in certain circumstances. Tex. Civ. Prac. & Rem. Code § 101.025. The TTCA does not waive immunity with respect to claims "arising out of assault, battery, false imprisonment, or any other intentional tort." Id. at § 101.057(2); see Goodman v. Harris Cnty., 571 F.3d 388, 394 (5th Cir. 2009). Plaintiff's assault claim is unquestionably an intentional tort for which County's immunity has not been waived. Tex. Civ. Prac. & Rem. Code § 101.057(2). The assault claim against County is dismissed.

B.    Claims Against Anderson Under 42 U.S.C. § 1983

    It is well-settled that "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson

12

v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) (citation omitted).

Thus, to state a claim for relief, plaintiff must allege specific

facts describing the acts or omissions of each defendant in the

purported constitutional violation. Likewise, supervisors may be

held liable for civil rights violations only if they actively

participated in the acts that caused the constitutional

violation, or if they "implemented unconstitutional policies that

causally resulted in plaintiff's injury." Mouille v. City of

Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992); Thompkins v.

Belt, 828 F.2d 298, 304 (5th Cir. 1987).

In plaintiff's § 1983 claims, Anderson is named only in his

capacity as Sheriff and as supervisor of other officers. No

facts are alleged to show any act or omission by Anderson that

caused any violation of plaintiff's constitutional rights or that

support a claim of supervisory liability against him. The § 1983

claims asserted against Anderson are dismissed.

C.    First Cause of Action: Failure to Protect

This claim is asserted against County, Anderson, and

Officers #7, #9, and #10. The claims against County and Anderson

are dismissed for the reasons set forth above.

The failure of prison officials to protect a prisoner from

attacks by other prisoners may, under certain circumstances,

constitute cruel and unusual punishment in violation of the

13

Eighth Amendment.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-33 (1994)

(citations omitted).  However, not "every injury suffered by one

prisoner at the hands of another translates into constitutional

liability for prison officials responsible for the victim's

safety."  <u>Id.</u> at 834.  To establish an Eighth Amendment violation

for failure to protect, a prisoner "must show that he is

incarcerated under conditions posing a substantial risk of

serious harm" and that prison officials were deliberately

indifferent to the prisoner's safety.  <u>Id.</u> at 834.

An official acts with the requisite deliberate indifference

if he is "aware of facts from which the inference could be drawn

that a substantial risk of serious harm existed," and he actually

draws such inference.  <u>Id.</u> at 837.  "An official's failure to

alleviate a significant risk that he should have perceived but

did not, while no cause for commendation, cannot under our cases

be condemned as the infliction of punishment."  <u>Id.</u> at 838.

Deliberate indifference standard is "an extremely high standard

to meet."  <u>Domino v. Tex. Dep't of Criminal Justice</u>, 239 F.3d

752, 756 (5th Cir. 2001).

Plaintiff has failed to establish deliberate indifference.

Regarding Officer #7, the complaint alleges only that during

intake, this defendant knew about the nature of plaintiff's

offense and saw his disabled left arm, but refused to place him

14

in protective custody.  Nothing is alleged to suggest that
Officer #7 drew any inference that plaintiff was subject to a
substantial risk of serious harm on the basis of these facts.
This is especially true given the limited nature of the
interaction between Officer #7 and plaintiff, which apparently
occurred only during the intake process.

Similarly, as to Officer #9, the complaint alleges that he
knew plaintiff was the victim of a previous attempted assault,
and as a result, had plaintiff moved to another part of the jail.
Regarding Unknown Officer #10, the complaint alleges that this
defendant moved plaintiff to another cell when plaintiff told
Officer #10 that other prisoners had threatened him.  Although
the complaint alleges that plaintiff was later assaulted
following the move to different cells, there are no allegations
that plaintiff told Officer #9, Officer #10, or anyone else about
such threats before or after his arrival in the new cell.
Nothing is alleged to show Officer #9 or Officer #10 were aware
of any facts from which either could have drawn an inference of a
risk to plaintiff of an assault in the new cell, or that either
drew such an inference.

Under these circumstances, not only are no facts alleged
from which Officers #7, #9, and #10 could have drawn an inference
of a risk to plaintiff, none are alleged to show that any of

15

these defendants actually drew such an inference.  Plaintiff has failed to meet the "high standard" of deliberate indifference as to Officers #7, #9, and #10.

D.    Second Cause of Action: Excessive Force

Plaintiff's claims of excessive force as to County and Anderson are dismissed for the reasons set forth in sections III.A. & B., supra.  Other than the claims against County and Anderson, plaintiff has alleged sufficient facts to proceed on his claim of excessive force against Penrod, Bohn, Wallace, Robles, McCray, Aguirre, Newton, and Defendant #11.

E.    Third Cause of Action: Failure to Provide Medical Treatment

Plaintiff has alleged sufficient facts to proceed on this claim against Defendant #11.

F.    Fourth Cause of Action: Conspiracy to Retaliate for Plaintiff's Exercise of his First Amendment Right of Access to Courts

This claim is asserted against Anderson, Penrod, Newton, Bohn, Wallace, Officer #8, and Defendant #11.  Plaintiff contends that these defendants conspired to prevent him from accessing the court to litigate his "actual innocence" habeas claim.

To prevail on a claim of civil conspiracy requires plaintiff to establish (1) an actual violation of a constitutional right, and (2) that the defendants acted in concert with the specific intent to violate the right.  Cinel v. Connick, 15 F.3d 1338,

16

1343 (5th Cir. 1994).   A plaintiff must plead the "operative

facts" upon which a conspiracy claim is based.   Lynch v.

Cannatella, 810 F.2d 1363, 1369-70 (5th Cir. 1987).   Bald

assertions of a conspiracy are insufficient.   Id. at 1370.

Plaintiff's conspiracy claim fails because he has not alleged the

violation of a constitutional right, and because his claims of

conspiracy are conclusory.

It is now well-settled that prisoners generally have a right

of access to the court.   Bounds v. Smith, 430 U.S. 817, 821

(1977).   This right of access is not unlimited, but "encompasses

only a reasonably adequate opportunity to file nonfrivolous legal

claims challenging their convictions or conditions of

confinement."   Jones v. Greninger, 188 F.3d 322, 325 (5th Cir.

1999) (per curiam) (citations omitted).   Further, to prevail on a

claimed violation of the right of access to the court, the

prisoner must demonstrate that such denial prejudiced his

position as a litigant.   McDonald v. Steward, 132 F.3d 225,

230-31 (5th Cir. 1998) (citation omitted).

Here, plaintiff alleges that Officer #8, the law library

supervisor, provided an "inadequate law library," Compl. at 21,

and refused to help plaintiff find a certain section of the code

for plaintiff to use in preparing for his habeas hearing.

Plaintiff also alleges that certain other actions, such as the

17

assaults by other prisoners and officers, false charges against him by jail officials for assault, limits to his ability to shower, and threats against him, were an attempt to prevent him from pursuing his habeas action.

The complaint confirms, however, that plaintiff was represented by counsel at his hearing, and that the hearing went forward as scheduled. At the hearing, plaintiff's counsel requested, and received, a continuance and reassignment of the case to the previously-presiding judge, all relief plaintiff wanted his attorney to seek. Plaintiff has thus alleged no facts to show that the defendants engaged in conduct that resulted in a violation of his right of access to the court. Nor has he alleged or shown that any alleged denial of access prejudiced his position as a litigant. To prevail on his conspiracy claim, plaintiff must "prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient." <u>Gillum v. City of Kerrville</u>, 3 F.3d 117, 123 (5th Cir. 1993) (per curiam) (citation omitted). Because plaintiff has failed to show an actual deprivation of his right to access to the court, the conspiracy claim fails.

This claim fails for the additional reason that the allegations of conspiracy are conclusory. Plaintiff alleges that Penrod was commander at the jail, and that Bohn, Newton, Wallace,

18

and Defendant #11 were working on his assigned floor during the time period from January 9, 2012 to February 8, 2012.  The complaint does not allege that the defendants worked the same shift, same days of the week, or that plaintiff even saw the defendants together, or any other facts from which the court could even infer any form of agreement or collusion between them to deprive plaintiff of access to the court.  Alleging that the defendants were assigned to the same floor at the jail is little more than a speculative, bald assertion of a conspiracy.  More than a "blanket of accusation" is required to support a claim of conspiracy under § 1983.  Arsenaux v. Roberts, 726 F.2d 1022, 1024 (5th Cir. 1982).  This claim is dismissed as to all defendants.

G.   <u>Fifth Cause of Action: Violation of First Amendment Right to be Free From Retaliation for Exercising Rights to Freedom of Speech and Religion</u>

It appears plaintiff has alleged sufficient facts to proceed on this claim against defendants Robles, Wallace, and McCray. This cause of action is also asserted against Swain, alleging that he "talked crazy to Plaintiff almost non stop for about two days" in January 2012, talking about plaintiff's criminal case and "berating" his Christian beliefs.  Compl. at 22.  However, words alone cannot sustain plaintiff's claim.  "[M]ere threatening language and gestures of a custodial office[r] do

not, even if true, amount to constitutional violations."

McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983) (citation

omitted).  The fifth cause of action is dismissed as to Swain.

H.   Sixth Cause of Action: Violation of Equal Protection Clause, ADA, and Section 504 of the RA[6]

This claim is asserted against County, Anderson, and Officer #7.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, the RA prohibits discrimination against individuals with disabilities in institutions receiving federal funds.  29 U.S.C. § 794(a).

As an initial matter, only the public entity is amenable to suit under either statute.  Nottingham v. Richardson, 499 F. App'x 368, 376 n.6 (5th Cir. 2012).  Although plaintiff asserted this claim against County, Anderson, and Officer #7, the latter two are not proper defendants.  Hence, the court is considering the ADA and RA claims only against County.

---

[6]The Fifth Circuit has held that, inasmuch as the rights and remedies under the ADA and the RA are the same, case law interpreting one statute can be applied to interpreting the other. Pace v. Bogalusa City Sch. Bd., 403 F.3d 272, 287–88 (5th Cir. 2005).

To state a claim for relief under Title II of the ADA requires plaintiff to allege that: (1) he has a qualified disability; (2) the public entity has denied him the benefits of the services, programs, or activities for which it is responsible, or it has otherwise discriminated against him; and, (3) the discrimination is "by reason of" his disability. Hale v. King, 642 F.3d 492, 499 (5th Cir. 2011) (per curiam).

The complaint does not specify the exact nature of plaintiff's disability, other than that it involves his left arm and hand.[7] For purposes of evaluating the complaint under § 1915A, the court will accept plaintiff's contention that his left arm and hand are disabled. Nevertheless, plaintiff still has failed to state a claim for relief under the ADA or RA.

The basis of these claims is that County failed or refused to place plaintiff in protective custody. The complaint makes clear, however, that the reason given for such refusal was not plaintiff's disability, but rather because his underlying offense

---

[7]Plaintiff also contends that he has high blood pressure, problems with cholesterol, and takes medication for these problems, along with a daily aspirin due to a family history of heart failure. To the extent plaintiff is attempting to claim these conditions qualify as "disabilities," the court is not persuaded. A "disability" under the statute is "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102. Not every impairment is a disability under the ADA. Oswalt v. Sara Lee Corp., 74 F.3d 91, 92 (5th Cir. 1996) (per curiam). Instead, plaintiff must demonstrate that his condition significantly impairs a major life activity. Id. No such allegation is made in the complaint. Even if the court considered these conditions "disabilities" for purposes of plaintiff's ADA/RA claim, however, he has still failed to allege facts to show a violation of the statutes by County.

was not in the category of offenses for which protective custody was provided.  Further, placement in or out of protective custody is not the type of "services, programs, or activities" contemplated by the statute.  See Pa. Dep't of Corr. v. Yeskey 524 U.S. 206, 210 (1998) (in considering claims under 42 U.S.C. § 12132, services provided by prisons include those with recreational, medical, educational, and vocational aspects).

Further, the complaint fails to allege facts to show that plaintiff was refused protective custody "by reason of" his disability.  The complaint alleges plaintiff requested protective custody because of his particular offense and because of his purported disability.  However, the complaint further contends that the reason given for refusing plaintiff's request was because protective custody was available only to prisoners who committed offenses involving children.  The complaint does not allege or even suggest that plaintiff's disability was a reason for such refusal.  Accordingly, plaintiff has failed to state a claim under the ADA or RA.

The equal protection portion of this claim similarly fails.  To prevail on such a claim requires plaintiff to show either intentional discrimination against him, by a state actor, because of his membership in a protected class, or that he was intentionally treated differently from similarly situated

22

prisoners.  <u>Batiste v. Harris</u>, 519 F. App'x 254, 255 (5th Cir.
2013) (per curiam) (citing <u>Gibson v. Tex. Dep't of Ins.--Div. of
Workers' Comp.</u>, 700 F.3d 227, 238 (5th Cir. 2012)).  A single
conclusory assertion that similarly situated prisoners are
treated differently, without factual support, is all that is
found in the complaint to support the equal protection claim.
Conclusory assertions are insufficient to state a claim for
relief.  <u>Twombly</u>, 550 U.S. at 555.

I.   <u>Seventh Cause of Action: Violation of Procedural and
     Substantive Due Process</u>

     This cause of action encompasses approximately two single-
spaced, typewritten pages that appear to describe a sequence of
events that purportedly occurred while plaintiff was incarcerated
in the jail.  Apparently some of the events resulted in plaintiff
being issued disciplinary write-ups.  However, it is not clear
whether plaintiff claims that only the issuance of the
disciplinary write-ups violated his due process rights, or if he
contends that some of the other actions or activities described
under this cause of action also constituted a violation.

     The only specific allegation is that Officer #9 responded to
an attempted assault by moving plaintiff to another cell, when
plaintiff believes he should have been moved to protective
custody.  Nothing is alleged to show that Officer #9 had any role

in the decision of where to move plaintiff or how such a decision
violated plaintiff's due process rights.  This claim is dismissed
as to Officer #9.

In preparing his amended complaint, plaintiff must clearly
identify the precise acts or actions he contends constituted a
violation of his procedural and substantive due process rights,
describe the facts supporting each alleged violation, and
identify each defendant against whom plaintiff is asserting this
claim.

J.   Eighth Cause of Action: Assault

The court at this time is permitting plaintiff to proceed
with the state-law assault claim against all defendants except
County.

K.   Plaintiff Must File An Amended Complaint

As a consequence of the foregoing rulings in this memorandum
opinion and order, only the following claims remain in this
action: second cause of action, excessive force, against Penrod,
Wallace, Bohn, Robles, McCray, Aguirre, Newton, and Defendant
#11; third cause of action, failure to provide medical care,
against two unknown defendants; fifth cause of action, violation
of First Amendment rights, against Robles, Wallace, and McCray;
seventh cause of action, violation of due process rights, but
plaintiff must specify the exact claims he is attempting to

24

assert, and the exact defendants named in this cause of action; and, eighth cause of action, state-law tort of assault, against Anderson, Penrod, Bohn, Wallace, Aguirre, McCray, and Defendant #11.

If plaintiff wishes to pursue any claims against the remaining defendants, he must file an amended complaint by the date set forth below. In the amended complaint, plaintiff must eliminate the defendants and claims dismissed herein, and exclude facts that pertain only to the dismissed claims. No additional claims or defendants may be added to the amended complaint, except as expressly permitted in this memorandum opinion and order.

It is unclear if some of the named defendants are also included as part of the seventeen unnamed officers grouped together as Defendant #11. To the extent plaintiff intends to persist in any claims against Defendant #11 when filing the amended complaint, he must separately name those individuals as defendants, giving each a separate number. To the extent some of the unnamed seventeen defendants are also separately named, plaintiff should eliminate them as unnamed defendants.

IV.

Order

Therefore,

The court ORDERS that all claims and causes of action asserted in the above-captioned action by plaintiff, Robert Dale Medford, against defendants County, Unknown Officer #7, Unknown Officer #8, Unknown Officer #9, Unknown Officer #10, and Swain in the above-captioned action be, and are hereby, dismissed.

The court further ORDERS that all claims asserted against Anderson, Penrod, Bohn, Newton, Wallace, and Defendant #11 in their official capacities be, and are hereby, dismissed.

The court further ORDERS that plaintiff's claims for failure to protect (first cause of action), conspiracy to retaliate (fourth cause of action), and violation of Equal Protection rights, the ADA, and RA (sixth cause of action), be, and are hereby, dismissed as to all defendants.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to such dismissals.

The court further ORDERS that plaintiff by July 11, 2014, file an amended complaint that includes only the claims and causes of action not dismissed by this memorandum opinion and order, and that follows the court's instructions herein

26

concerning identification of claims and defendants.

The court further ORDERS that failure of plaintiff to comply with this order may result in the imposition of sanctions, including dismissal of this action in its entirety, without further notice.

SIGNED June 10, 2014.

JOHN McBRYDE
United States District Judge